IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                         |   |                                |
|-----------------------------------------|---|--------------------------------|
| TRANSPACIFIC TIRE & WHEEL, INC.         | : |                                |
|     Plaintiff/Judgment Creditor:        |   |                                |
|                                         |   |                                |
|     v.                                  | : | Civil Action No. DKC 06-0187   |
|                                         |   |                                |
|                                         | : |                                |
| ORTECK INTERNATIONAL, INC.              |   |                                |
|     Defendant/Judgment Debtor           | : |                                |
|                                         |   |                                |
|                                         | : |                                |
|                                         |   |                                |
| ORTECK GLOBAL SUPPLY &                  | : |                                |
|    DISTRIBUTION COMPANY LLC             |   |                                |
| SANJEET S. VEEN                         | : |                                |
| HARBHAJAN VEEN                          |   |                                |
| METRO TIRE WHOLESALE, LLC               | : |                                |
| VENETIAN INVESTMENTS, LLC               |   |                                |
|     Garnishees                          | : |                                |

**MEMORANDUM OPINION**

Presently pending and ready for review in this garnishment proceeding are the motions for summary judgment filed by Harbhajan Veen and Sanjeet S. Veen (ECF No. 272) and by Orteck Global Supply & Distribution Company, LLC, Metro Tire Wholesale, LLC, and Venetian Investments, LLC (ECF No. 273).  The issues have been briefed, and the court now rules, no hearing deemed necessary.  Local Rule 105.6.  For the following reasons, the motions will be granted in part and denied in part.

**I.  Background**

On March 30, 2010, the court granted a motion for summary judgment filed by Plaintiff TransPacific Tire & Wheel, Inc.

("TransPacific"), on Counts One, Two, and Eleven of TransPacific's amended complaint and entered judgment in the amount of $2,200,360.71, plus prejudgment interest, against Defendant Orteck International, Inc. ("Orteck International"). (ECF Nos. 70, 71). Orteck International was found liable for breach of contract and conversion. On April 26, 2010, Orteck International filed a notice of appeal. (ECF No. 76). The next day, Orteck International filed a motion to stay execution of the judgment and to waive the *supersedeas* bond during pendency of the appeal. (ECF No. 78). On May 4, 2010, the parties filed a joint motion for final judgment. (ECF No. 81).[1] The court denied the motion to stay and granted the motion for final judgment on July 13, 2010. (ECF Nos. 83, 84). On November 17, 2011, the United States Court of Appeals for the Fourth Circuit affirmed the grant of summary judgment and final judgment. (ECF No. 253).

Separately, on July 28, 2010, and pursuant to Federal Rule of Civil Procedure 69(a)(1) and Maryland Rule 2-645, TransPacific, as the Judgment Creditor, moved for writs of garnishment as to a number of entities, including Garnishees Harbhajan Veen and Sanjeet S. Veen ("the Veens"), Orteck Global Supply & Distribution Company, LLC ("Orteck Global"), Metro Tire

---

[1] Orteck International sought entry of final judgment to perfect its appeal.

Wholesale, LLC ("Metro Tire"), and Venetian Investments, LLC ("Venetian") (collectively, "the Garnishees").[2]   (ECF Nos. 85, 86).  The clerk issued writs of garnishment as to the Garnishees on July 30, 2010.  (ECF Nos. 87, 89, 90, 92, 103).  Pursuant to Maryland Rule 2-645(e), the Garnishees answered the writs, denying that they held any property belonging to Orteck International, the Judgment Debtor.  (ECF Nos. 153, 157, 165, 173, 174).

On October 13, 2010, TransPacific timely filed replies, contesting the Garnishees' answers to the writs of garnishment. (ECF Nos. 199, 200, 201, 202, 203).  Thus, per Maryland Rule 2-645(g), "an original action between the judgment creditor as plaintiff and the garnishee as defendant" commenced, Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 571 (3[d] ed. 2003), with TransPacific's replies constituting the complaints, *see id.*  Twenty-one days later, TransPacific amended these replies as of right ("the Amended Replies"), clarifying the grounds for relief upon which it sought garnishment.  (ECF Nos. 215, 216, 217, 218, 219).

As to Venetian and Metro Tire, TransPacific asserts one count of fraudulent conveyance against each.  According to the

---

[2] Certain issues discussed in this memorandum opinion concern only the Veens and Orteck Global.  That subset of the Garnishees will be referred to as "the Veen/Global Garnishees."

Amended Replies, Venetian was formed in November 2003, and Metro Tire was formed in January 2004, before most of the events that gave rise to the underlying suit between TransPacific and Orteck International. (*See* ECF No. 219 ¶¶ 9-11; ECF No. 218 ¶¶ 9-11). TransPacific alleges that, like Orteck International, both Venetian and Metro Tire are "owned and controlled" by one or both of the Veens. (ECF No. 219 ¶ 13; ECF No. 218 ¶ 13). Between March 2005 and September 2007 — after TransPacific had filed suit against Orteck International — Orteck International transferred "at least $422,924" to Venetian and "at least $550,997" to Metro Tire. (ECF No. 219 ¶ 14; ECF No. 218 ¶ 14). Neither Venetian nor Metro Tire paid "fair consideration" for these transfers. (ECF No. 219 ¶ 15; ECF No. 218 ¶ 15).

As to Orteck Global, Transpacific asserts three counts: (1) fraudulent conveyance; (2) fraud; and (3) alter ego. According to the Amended Replies, Orteck Global was established on April 26, 2004. (ECF No. 215 ¶ 10). TransPacific alleges that "Orteck Global had no significant independent business until after TransPacific filed [the underlying] lawsuit against Orteck International." (*Id.* ¶ 13). Again, like Orteck International, Orteck Global is "owned and controlled" by one or both of the Veens. (*Id.* ¶ 14). Between May 2005 and April 2007, Orteck International transferred "more than $1.3 million" to Orteck Global. (*Id.* ¶ 15). In addition, Orteck

4

International transferred "all of the tangible and intangible assets associated with its tire business to Orteck Global, including but not limited to the 'Orteck' name; all of the goodwill associated with the 'Orteck' name and Orteck International's business; Orteck International's customer lists; Orteck International's office equipment; and Orteck International's phone number." (*Id.* ¶ 16). Orteck Global did not pay "fair consideration" for these transfers. (*Id.* ¶ 17). TransPacific further alleges that Orteck Global occasionally still uses the name "Orteck International" to conduct its tire business. (*Id.* ¶ 22).

Finally, as to the Veens, TransPacific asserts three counts as well: (1) fraudulent conveyance; (2) fraud; and (3) alter ego. TransPacific alleges that Harbhajan Veen is the majority owner and president of Orteck International and that Sanjeet Veen is the minority owner and vice president. (ECF No. 216 ¶ 9; ECF No. 217 ¶ 9). TransPacific generally alleges that the Veens owned and controlled Orteck International, Orteck Global, Venetian, and Metro Tire, and caused Orteck International to transfer its property to themselves and to the other entities to avoid having to pay the judgment entered against Orteck International in the underlying action. For example, in addition to the allegations set forth above in the other Amended Replies, TransPacific contends that Orteck International

transferred "at least $230,000" to Sanjeet Veen. (ECF No. 216 ¶ 13). In 2006, Sanjeet Veen caused Orteck International to purchase several vehicles on his behalf. (*See id.* ¶ 15). It also made regular payments on a loan for another vehicle owned by the Veens. (*See* ECF No. 217 ¶ 13). Orteck International later transferred "an interest" in all of these vehicles to the Veens. (ECF No. 216 ¶ 16; ECF No. 217 ¶ 14). At one point, it made a payment on the Veens's swimming pool. (ECF No. 216 ¶ 17; ECF No. 217 ¶ 15). The Veens did not pay "fair consideration" for any of these transfers. (ECF No. 216 ¶ 47; ECF No. 217 ¶ 45).

On November 22, 2010, the Veen/Global Garnishees filed a partial motion to dismiss or, in the alternative, for summary judgment as to the second and third counts against them. (ECF No. 223). That same day, each Garnishee filed an "answer" to the Amended Replies. (ECF Nos. 224, 225, 226, 227, 228).[3] After full briefing, Magistrate Judge Connelly denied the motion as premature. (ECF No. 233). Discovery then commenced.

On February 17, 2012, the Garnishees filed the pending motions for summary judgment. (ECF Nos. 272, 273). TransPacific filed a consolidated opposition on March 5, 2012. (ECF No. 275). None of the Garnishees replied.

_____

[3]  The Veen/Global Garnishees amended their respective "answers" on February 25, 2011. (ECF Nos. 237, 238, 239).

## II.  Standard of Review

The Garnishees style their respective motions as ones for summary judgment, but they are, in effect, motions for judgment on the pleadings under Federal Rule 12(c).  The Garnishees do not challenge TransPacific's evidence exactly.  Instead, the parties base all of their arguments solely on the pleadings, essentially treating the alleged facts as undisputed "evidence."[4] Some courts have formally converted a motion for summary judgment to a motion for judgment on the pleadings in similar situations.  *E.g.*, *Dyal v. Union Bag-Camp Paper Corp.*, 263 F.2d 387, 391 (5th Cir. 1959); *Miller v. Gain Fin., Inc.*, No. IP 90-1760-C, 1992 WL 494966, at *1 (S.D.Ind. Sept. 22, 1992), *aff'd*, 995 F.2d 706 (7th Cir. 1993); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722, at 368 (3[d] ed. 1998) ("[I]f the motion [for summary judgment] is made solely on the basis of one or more pleading, it is equivalent to a motion under Rule 12(b)(6) for a dismissal for failing to state a claim for relief or under Rule 12(c) for a judgment on the pleadings and should be treated as such.").  Regardless of the precise treatment here, the practical consequence is the same:  assuming the facts presented in the pleadings are true, it must be determined whether judgment in

---

[4] Indeed, the Garnishees attach the Amended Replies as exhibits in support of their motions.  (ECF Nos. 272-1, 273-1).

favor of the Garnishees is warranted as a matter of law. *Compare Davenport v. Davenport*, 146 F.Supp.2d 770, 783 (M.D.N.C. 2001) ("Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party is entitled to a judgment on the pleadings when no genuine issues of material fact exist, and the case can be decided as a matter of law."), *with* Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Although the Amended Reply as to Orteck Global mirrors the Amended Replies as to the Veens, Orteck Global joins Venetian and Metro's motion for summary judgment. (ECF No. 273). Despite this odd alignment, the bases for the two motions are largely identical. Both motions seek judgment as to TransPacific's "claims for fraudulent transfers" and "veil piercing claim" (ECF No. 272, at 2-3; ECF No. 273, at 2-3), which certainly cover TransPacific's fraudulent conveyance and alter ego claims.

The motions will also be construed as seeking judgment as to TransPacific's fraud claims, i.e., Count Two of the Amended Replies as to the Veen/Global Garnishees.[5] Rather than

---

[5] In its opposition papers, TransPacific defends its fraud claims (*see* ECF No. 16, at 16), which suggests it reads the Garnishees' motion the same way.

articulate an independent cause of action, however, the fraud claims appear only to duplicate the fraudulent conveyance claims or to provide a reason for piercing the corporate veil. (*E.g.*, ECF No. 215 ¶¶ 32-33 (alleging that "Orteck Global . . . was established . . . to carry out fraudulent conveyances" and that "[i]n light of this fraud, it is appropriate to disregard the fiction of separate corporate entities.")). Accordingly, the fraud claims will be considered subject to the Garnishees' motions but will only be discussed in conjunction with the other claims.

**III. Analysis**

   **A.   Fraudulent Conveyance**

In a garnishment proceeding, when the judgment creditor challenges the answer filed by a garnishee, some special rules apply to the analysis. The judgment creditor is said to stand in the shoes of the judgment debtor, but this is true only as to certain threshold issues. For example, the judgment creditor can assert its own rights against the garnishee if a fraudulent conveyance is alleged.

As stated by the Court of Appeals of Maryland:

> A writ of garnishment is a means of enforcing a judgment. It allows a judgment creditor to recover property owned by the debtor but held by a third party. . . .
> "A garnishment proceeding is, in essence, an action by the judgment debtor for the benefit of the judgment creditor

> which is brought against a third party, the
> garnishee, who holds the assets of the
> judgment debtor.   An attaching judgment
> creditor is subrogated to the rights of the
> judgment debtor and can recover only by the
> same right and to the same extent that the
> judgment debtor might recover."

*Parkville Fed. Sav. Bank v. Md. Nat'l Bank*, 343 Md. 412, 418

(1996) (citations omitted) (quoting *Fico, Inc. v. Ghingher*, 287

Md. 150, 159 (1980)).  More recently, the Court of Appeals noted

that

> [t]he opinions of this Court have emphasized
> the principle, growing out of the nature and
> function of a garnishment proceeding, that
> the creditor merely steps into the shoes of
> the debtor and can only recover to the same
> extent as could the debtor.

*Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am.*,

368 Md. 608, 623 (2002).

There is, however, "a well-recognized exception to the

general rule[:] where the debtor has fraudulently conveyed

property to another[,] the grantee may be charged as garnishee,

even though the grantor cannot maintain a suit for its recovery

against the grantee." *Dodson v. Temple Hill Baptist Church,*

*Inc.*, 248 Md. 697, 703 (1968).  Similarly, the Court of Special

Appeals of Maryland, citing *Damazo v. Wahby*, 269 Md. 252 (1973),

explained that an in personam judgment can be entered against

the person to whom a transfer was wrongfully made.    *See*

*Molovinsky v. Fair Emp't Council of Greater Wash., Inc.*, 154
Md.App. 262, 283-84 (2003).

The Court in *Molovinsky* also noted that section 15-209 of
the Commercial Law Article of the Maryland Code provides that a
creditor has the option of either having a fraudulent conveyance
set aside or disregarded so that the property conveyed can be
attached. *See id.* at 284. Specifically, that statute reads:
"If a conveyance . . . is fraudulent as to a creditor whose
claim has matured, the creditor . . . may:  (1) Have the
conveyance set aside . . . to the extent necessary to satisfy
the claim; or (2) Levy on or garnish the property conveyed as if
the conveyance were not made." Md. Code Ann., Com. Law § 15-
209(a).

**1.   *Bragunier* Does Not Foreclose a Fraudulent Conveyance
       Claim in a Garnishment Proceeding**

Despite the foregoing law, the Garnishees contend that the
Court of Appeals in *Bragunier* actually held that "no claim for
fraudulent conveyance will lie in a garnishment proceeding."
(ECF No. 272, at 3; ECF No. 273, at 4).  As TransPacific
correctly argues (ECF No. 275, at 5-6), the Garnishees
misconstrue the *Bragunier* decision.

In *Bragunier*, Bragunier Masonry Contractors, Inc. ("BMC"),
a subcontractor, sued Edward M. Crough, Inc. ("Crough"), a
general contractor, for breach of contract and obtained a money

judgment against Crough.    368 Md. at 618.    When BMC was unable
to collect the judgment, it commenced a garnishment proceeding
against The Catholic University of America ("Catholic"), in
part, pursuant to section 15-209.    *Id.* at 618-19.    During the
relevant time period, Crough had performed some work for
Catholic, the payment for which it ultimately waived.    *Id.*  BMC
alleged that Crough's release of Catholic from Catholic's
obligation to pay constituted a fraudulent conveyance, and BMC
sought to garnish the monies that Catholic should have paid for
the work.    *Id.* at 619.

The Court of Appeals did not balk at the fact that BMC
chose to assert its rights under section 15-209 in a garnishment
proceeding.    Instead, the *Bragunier* court repeatedly made clear
that its ultimate decision in the case — that BMC's claim
against Catholic was barred by the statute of limitations —
turned on the distinctive nature of garnishment proceedings.
*Compare id.* at 624 n.11 (declining to address the rights of a
creditor relative to a debtor "in a direct action to set aside a
fraudulent conveyance"), *with id.* at 628 (discussing Catholic's
limitations defense as to the fraudulent conveyance claim "[i]n
a garnishment action, the type of action [BMC] chose to file"),
*and id.* at 632 (explaining the nature of BMC's rights and
Catholic's defenses "upon [BMC's] choosing" to bring a
garnishment action).    Thus, *Bragunier* actually reinforces the

12

propriety of bringing a fraudulent conveyance claim under section 15-209 in a garnishment action.

The flaw in the Garnishees' reading of *Bragunier* is their failure to recognize the excepted nature of fraudulent conveyance actions. While it is true that the garnishment proceeding here is roughly dictated by the rights of the Judgment Debtor, Orteck International, and that as "a knowing participant" in the alleged fraudulent conveyances, Orteck International "could not have been defrauded by them" (ECF No. 272, at 6; ECF No. 273, at 6),[6] it is well-settled in Maryland that a fraudulent conveyance by the judgment debtor falls outside the general rule that the judgment creditor is subrogated to the rights of the judgment debtor, *see Dodson*, 248 Md. at 703; *see also Catholic Univ. of Am. v. Bragunier Masonry Contractors, Inc.*, 139 Md.App. 277, 295 (2001) ("Although garnishment ordinarily will not have the effect of changing the nature of the rights between the defendant/judgment debtor and a person to whom he has transferred assets, there is an exception to that rule when there has been a fraudulent conveyance by the

---

[6] The Garnishees' observation that the release in *Bragunier* effected by Crough "did not constitute a fraud as between the parties to it" (ECF No. 272, at 5; ECF No. 273, at 5) has no bearing on the above analysis. That conclusion by the Court of Appeals had to do with the applicability of the discovery rule to Crough's potential cause of action against Catholic, not whether that cause of action could be maintained. *See Bragunier*, 368 Md. at 628-29.

judgment debtor."), *aff'd*, 368 Md. 608 (2002).  Consequently, neither Orteck International's knowledge of the conveyances nor the broader fact that TransPacific chose to contest the conveyances in a garnishment action bars TransPacific's section 15-209 claims.

> ## 2.   Some of TransPacific's Fraudulent Conveyance Claims Are Barred by the Statute of Limitations

The Garnishees advance a related argument that, according to *Bragunier*, the three-year limitations period for TransPacific's fraudulent conveyance claims expired before the Amended Replies were filed.  (*See* ECF No. 272, at 6; ECF No. 273, at 6-7).  TransPacific disputes both the date of accrual of the claims and the action it must take within the statute of limitations to preserve its claims.  (*See* ECF No. 275, at 6-10).[7] Neither side's position is wholly accurate.

Although the Garnishees are correct that the Amended Replies are treated as complaints (ECF No. 272, at 6 n.1; ECF No. 273, at 7 n.1), they point to no authority suggesting that the filing of those papers (or, more accurately, the original replies to the Garnishees' answers to the writs) must occur within the applicable statute of limitations.  In contrast,

---

[7] TransPacific does not dispute the length of the statute of limitations period itself, which for all civil actions in Maryland is generally three years.  Md. Code Ann., Cts. & Jud. Proc. § 5-101.

TransPacific notes that the Court of Appeals in *Bragunier* indicated that the filing of the *request* for writ of garnishment is the key act. (ECF No. 275, at 7 n.2 (citing *Bragunier*, 368 Md. at 630)).[8]   Here, TransPacific requested the writs of garnishment on July 28, 2010. (ECF Nos. 85, 86). Thus, if any of TransPacific's fraudulent conveyance claims accrued prior to July 28, 2007, those claims are barred.

As to when TransPacific's fraudulent conveyance claims actually accrued, *Bragunier* is once again instructive. "[I]n a garnishment proceeding[, because] the creditor steps into the shoes of the debtor . . . , the creditor also steps into the shoes of the debtor for limitations purposes." *Bragunier*, 368 Md. at 629.   "[T]he limitations issue relates to the point in time that [the garnishee's] obligation (if any existed) to pay [the debtor] became an obligation to pay." *Id.* at 628-29.   In *Bragunier*, "[t]hat obligation . . . , if it existed, became an obligation when [Crough's work] was completed." *Id.* at 629.   To reach that conclusion, the Court of Appeals hypothesized that the "only underlying action available for [Crough] against [Catholic] in a Maryland court would be a breach of contract

---

[8] Similarly, the Court of Special Appeals pointed to the filing of the request for writ of garnishment as the necessary action. *See Catholic Univ. of Am.*, 139 Md.App. at 297-98.

action for any nonpayment under the [work contract] that [Crough] might have demanded." *Id.*

Following the *Bragunier* court's lead, to determine the accrual date of TransPacific's fraudulent conveyance claims, it is necessary to imagine a scenario in which Orteck International chooses to sue the Garnishees to recover any transferred property.   In this case, Orteck International allegedly transferred various sums of money and business items to the Garnishees without receiving any benefit in return.   Thus, if Orteck International were to sue the Garnishees to get those items back, its likely action would be in the nature of unjust enrichment. *See Balt. City Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 194 Md.App. 400, 422-23 (2010) (describing the elements of unjust enrichment as "1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value").   And the date of accrual for limitations purposes would likely be the date the transfers were made. *See id.* at 420-21 (predicting, without deciding, that the statute of limitations of an unjust enrichment claim begins to run from the date "the services are performed" and not the date a demand for payment is made or refused).

TransPacific's argument that its fraudulent conveyance claims accrued "when it discovered in the course of attempting to collect on the . . . judgment that Orteck [International] was insolvent and had fraudulently transferred its assets away to [the Garnishees] without fair consideration" (ECF No. 275, at 10) can be dismissed because it relies on a faulty premise: that "this is a 'direct action' . . . 'to set aside a fraudulent conveyance'" (*id.*). TransPacific is mistaken, as its fraudulent conveyance claims are contained in the Amended Replies, which, as previously noted, set forth the causes of action in this garnishment proceeding.

The statute of limitations is an affirmative defense that ordinarily must be pleaded and proven by the party asserting it. *See Newell v. Richards*, 323 Md. 717, 725 (1991) ("As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit."); *see also* Md. Rule 2-323(g) (requiring a defendant to plead specially a statute of limitations defense). When the parties rely solely on the pleadings, the defense will only prevail if it categorically appears on the face of the pleadings that the statute of limitations has run. *See Alexander v. City of Greensboro*, 801 F.Supp.2d 429, 445 (M.D.N.C. 2011) ("[A]n affirmative defense . . . may only be reached at the [motion for judgment on the

pleadings] stage if the facts necessary to deciding the issue clearly appear on the face of the pleadings."). Therefore, as the answering parties, the Garnishees must clearly establish via the pleadings that TransPacific's fraudulent conveyance claims are time-barred.

Under the circumstances here, the statute of limitations will bar any transfers that were made prior to July 28, 2007. TransPacific's claims against Metro Tire and Venetian are not foreclosed because, although Orteck International's transfers to them occurred "between March 2005 and September 2007" (ECF No. 218 ¶ 14; ECF No. 219 ¶ 14), the Amended Replies do not provide sufficient facts to discern how much money was actually transferred before July 28, 2007. The same cannot be said about Orteck Global or the Veens, however, at least as to certain items. With respect to the Veens, the only conveyances that TransPacific may potentially garnish are the "interest" in any vehicles that Orteck International transferred and the payments on the swimming pool (ECF No. 216 ¶¶ 16-17; ECF No. 217 ¶¶ 14-15), all of which occurred on unspecified dates. All other conveyances allegedly occurred in 2006 or earlier (ECF No. 216 ¶¶ 13, 15; ECF No. 217 ¶ 13); thus, they are beyond the scope of this action. With respect to Orteck Global, the only conveyances within reach are the business items. (ECF No. 215 ¶ 16). The $1.3 million transfer cannot be recovered in this

garnishment proceeding because that amount was conveyed in full by April 2007. (*Id.* ¶ 15). In sum, the Garnishees' motions will be granted in part to the extent TransPacific seeks to garnish property that was definitely conveyed prior to July 28, 2007. Their motions will be otherwise denied on these grounds.

**B.   Alter Ego**

The Veen/Global Garnishees argue that they are not alter egos of Orteck International; therefore, TransPacific may not pierce the corporate veil and garnish any property of Orteck International's that is allegedly in their possession. (ECF No. 272, at 6-7; ECF No. 273, at 7). TransPacific disagrees. (ECF No. 275, at 13-21). Although judgment is ultimately warranted in favor of the Veen/Global Garnishees, their reasoning is flawed. Before discussing why this is so, it is necessary to address a preliminary argument presented by TransPacific.

**1.   The Law-of-the-Case Doctrine Does Not Apply**

TransPacific argues that the question of whether it has alleged a "'claim' for piercing the corporate veil" has already been determined by the court, and, thus, the law of the case doctrine proscribes re-litigation of the issue. (ECF No. 275, at 13). The law-of-the-case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 203

F.3d 291, 304 (4ᵗʰ Cir. 2000) (quoting *Arizona v. California*, 460
U.S. 605, 618 (1983)).   The doctrine is discretionary and not
jurisdictionally required.   "Law-of-the-case principles . . .
are a matter of practice that rests on good sense and the desire
to protect both the court and parties against the burdens of
repeated reargument by indefatigable diehards."   18B Charles
Alan Wright et al., *Federal Practice and Procedure* § 4478, at
667 (2ᵈ ed. 2002).

In this case, while Judge Connelly's order resolving the
November 22, 2010, partial motion to dismiss, or, in the
alternative, for summary judgment included some suggestion that
TransPacific had stated a valid claim for veil piercing, the
order ultimately denied the motion as premature.   (ECF No. 233).
Thus, no actual decision was rendered, which is required before
the law-of-the-case doctrine is even implicated.   *See Quern v.*
*Jordan*, 440 U.S. 332, 347 n.18 (1979) ("The doctrine of law of
the case comes into play only with respect to issues previously
determined.").   The intermediate conclusions contained in that
order are dicta and demand no law-of-the-case deference in this
memorandum opinion.   *See Bull HN Info. Sys., Inc. v. Hutson*, 229
F.3d 321, 326 n.3 (1ˢᵗ Cir. 2000) ("The law of the case doctrine
does not apply to dicta.").

> ## 2.   It Is Improper to Pierce the Corporate Veil of a Judgment Debtor in a Garnishment Proceeding

In Maryland, the corporate veil may be pierced only "where it is necessary to prevent fraud or enforce a paramount equity." *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 310 (1975).   The Court of Appeals has identified three discrete circumstances in which the corporate form may be disregarded:

> *First*.   Where the corporation is used *as a mere shield for the perpetration of a fraud*, the courts will disregard the fiction of separate corporate entity.
>
> *Second*.   The courts may consider a corporation as unencumbered by the fiction of corporate entity and deal with substance rather that form as though the corporation did not exist, *in order to prevent evasion of legal obligations*.
>
> *Third*.   Where the stockholders themselves, or a parent corporation owning the stock of a subsidiary corporation, *fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own*, the courts will also disregard the corporate entity for the protection of third persons.

*Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 734 (2003) (quoting Herbert M. Brune, Jr., *Maryland Corporation Law and Practice* § 371, at 384 (rev. ed. 1953)) (internal quotation marks omitted).   The third of these circumstances "embodies what is sometimes called the 'alter ego' doctrine." *Id.* at 735.

The fact that TransPacific set out "alter ego" as an independent ground for relief in the Amended Replies against the

Veen/Global Garnishees is somewhat confusing. The Amended
Replies are supposed to set forth specific causes of action for
recovery. Indeed, as Judge Motz noted in *Cadle Co. v. Chipman*,
No. JFM-07-00108, 2008 WL 509094 (D.Md. Feb. 21, 2008), because
the reply to a garnishee's answer to a writ of garnishment "is
to be treated as a complaint," it is subject to the notice
pleading requirements of Federal Rule 8(a) and may be dismissed
pursuant to Federal Rule 12(b)(6). *Id.* at *2. "[A] suit to
pierce the corporate veil," however, "is not itself an
independent cause of action, 'but rather is a means of imposing
liability on an underlying cause of action.'" *Nat'l City Bank
v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 355
(Bankr.D.Md. 2003) (quoting 1 C. Keating & G. O'Gradney,
*Fletcher Cyclopedia of the Law of Private Corporations* § 41, at
603 (1990)). TransPacific admits as much in its opposition
papers. (*See* ECF No. 275, at 12 (citing *Young v. Antar*, No.
WDQ-08-1912, 2010 WL 2039091, at *6 (D.Md. May 20, 2010)).

As noted earlier, TransPacific's fraud claim could be
interpreted as grounding the alter ego count in a legitimate
cause of action. (*See, e.g.*, ECF No. 215 ¶¶ 32-33 ("Orteck
Global is a shield for the perpetration of a fraud against
TransPacific. . . . In light of this fraud, it is appropriate to
disregard the fiction of separate corporate entities . . . .")).
To that end, it appears that TransPacific's alter ego and fraud

22

counts, read together, seek to hold the Veen/Global Garnishees liable *for the underlying judgment* against Orteck International because they are alter egos of Orteck International.  Indeed, in its Amended Reply as to Orteck Global, TransPacific alleges "Orteck Global is the alter ego of Orteck International" and "TransPacific prays for judgment against Orteck Global for the full amount of the judgment *already entered* against Orteck International."  (ECF No. 215 ¶¶ 35, 37) (emphasis added).  Similarly, in the Amended Replies as to the Veens, "TransPacific prays for judgment against [Sanjeet S.] Veen for the full amount of the judgment *already entered* against Orteck International" (ECF No. 216 ¶ 57) (emphasis added), and "TransPacific prays for judgment against [Harbhajan] Veen for the full amount of the judgment *already entered* against Orteck International" (ECF No. 217 ¶ 55) (emphasis added).  Furthermore, in its consolidated opposition, TransPacific broadly states that it "seeks 'a determination of whether multiple entities exist as separate entities.'" (ECF No. 275, at 12).  In other words, TransPacific is *not* invoking an alter ego theory to hold that the Veen/Global Garnishees are responsible for monies the Veen/Global Garnishees themselves owe to Orteck International.  But that issue is precisely the focus of this garnishment proceeding.  *See Bragunier*, 368 Md. at 622 ("A garnishment proceeding is, in essence, *an action by the judgment debtor* for the benefit of the

judgment creditor *which is brought against a third party, the garnishee*, who holds the assets of the judgment debtor." (emphasis added)). Therefore, TransPacific's attempt to pierce the corporate veil of Orteck International via a writ of garnishment is misplaced.

The Court of Special Appeals in *LVI Environmental Services, Inc. v. Academy of IRM*, 106 Md.App. 699 (1995), *aff'd*, 344 Md. 434 (1997), confronted a similar attempt by a judgment creditor to garnish property based on a theory that the garnishees were effectively the same entity as the judgment debtor. The case arose in the analogous context of successor-corporation liability. There, Academy of IRM ("Academy"), the subcontractor on an asbestos removal project concerning Fort Belvoir in Virginia, sued Diversified Environmental Group, Inc. ("DEG"), and Desco Insulation Company ("Desco"), the general contractors,[9] for monies owed on the contract. *Id.* at 703. After default judgment was entered against DEG and Desco, Academy sought to garnish the overdue payments from LVI Environmental Services, Inc. ("LVI"), the assignee of certain rights arising out of the Fort Belvoir contract. *Id.* at 705. In the subsequent garnishment action, Academy argued that "DEG/Desco and LVI were, in reality, the same entity, i.e., that LVI was a mere

---

[9] DEG "occasionally operated under the trade name" Desco. *Id.* at 701.

continuation of DEG/Desco"; thus, LVI should be held responsible for the underlying judgment against DEG/Desco. *Id.* at 709. Moreover, LVI was on notice that Academy was seeking to hold it liable as garnishee based on a theory of successor-corporation liability. *Id.*

The Court of Special Appeals rejected Academy's arguments. Noting that "[i]n a garnishment proceeding, the rights of the creditor cannot rise above the rights of the debtor," *id.* at 708, the court explained that the garnishment action was not the proper avenue of relief in this situation:

> Academy of IRM . . . had a direct cause of action against LVI as the successor corporation of DEG/Desco. LVI, however, is not subject to garnishment by Academy of IRM. Academy of IRM could not transform the garnishment proceeding into a direct cause of action against LVI and proceed on a theory of successor corporation liability.

*Id.* at 709. In sum, it was not proper to apply a *theory of liability*, such as successor-corporation liability, for an underlying cause of action in a garnishment proceeding.[10]

Here, just as Academy argued that the judgment debtor and the garnishees "were, in reality, the same entity," TransPacific contends that Orteck International and the Veen/Global

---

[10] The Court of Appeals ultimately held that even if Academy of IRM had properly raised the issue of successor-corporation liability in the underlying proceeding, LVI would not have been found liable. 344 Md. at 454.

Garnishees are essentially the same entity based upon a theory of alter ego liability.  As the same entity, the argument goes, the Veen/Global Garnishees should be held responsible for Orteck International's debt to TransPacific.  Because this case is currently proceeding upon a writ of garnishment, however, Orteck International's debt does not matter; rather, the Veen/Global Garnishees' debts to Orteck International do.  TransPacific has stepped into the shoes of Orteck International.  It cannot "transform the garnishment proceeding into a direct cause of action" between TransPacific and the Veen/Global Garnishees and proceed on a theory of alter ego liability.  Accordingly, to the extent Count Three (or Count Two) of the Veen/Global Garnishees Amended Replies seeks to impose liability on the Veen/Global Garnishees for the underlying judgment against Orteck International, judgment is warranted in their favor.

## IV. Conclusion

For the foregoing reasons, the motions for summary judgment filed by Garnishees Harbhajan Veen, Sanjeet S. Veen, Global Supply & Distribution Company, LLC, Metro Tire Wholesale, LLC, and Venetian Investments, LLC will be granted in part and denied in part.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
